REQUESTED BY: Cristine R. Cecava Keith County Attorney
Whether a city that did not have a lottery of any kind authorized, established, or conducted as of April 4, 1984, the effective date of LB 744, may after holding an election, the results of which were in favor of establishing a video lottery, establish a video lottery between now and January 1, 1985?
No.
As background information you state that before the passage of LB 744 with the emergency clause the Ogallala City Council voted to place the issue of a video lottery on the ballot as required by § 28-1116 (Supp. 1983); that following the passage of LB 744 the council decided to leave the issue on the ballot. The election at which the issue of a video lottery was submitted was held following the effective date of LB 744.
Section 2 of LB 744, which is the section in question, provides:
 Any county, city, or village which has authorized, established, or is conducting a lottery which uses any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device on the effective date of this act may conduct such lottery only within the boundaries of such county or the corporate limits of such city or village until January 1, 1985, at which time such lottery shall be terminated.
(Emphasis added.)
It is obvious from a plain reading of the statute that the City of Ogallala had not authorized or established a lottery on the effective date of the act, as required by the above quoted section and § 28-1116 (Supp. 1983). The latter statute provides in part: `No county, city, or village shall establish and conduct such a lottery until such course of action has been approved by a majority of the registered voters of such county, city, or village. . .' If the city were conducting a lottery on the effective date of the act, it was doing so in violation of § 28-1116 (Supp. 1983) and other gambling statutes.
It appears to us that Section 2 of LB 744, the `grandfather clause,' is clear and unambiguous when read in the context of other applicable statutes, but should there be any ambiguity, it is readily clarified by reference to the following discussion of Section 2 of LB 744 on March 15, 1984.
 SENATOR HOAGLAND: What exactly do you intend in using the language, `authorized, established or conducting a lottery which uses any mechanical gaming device and so forth.'
 SENATOR V. JOHNSON: Okay, my intention is very simple. Number (1), that the people, that prior to the effective date of 744, which if it passes with the emergency clause means sometime next week, prior to that time, the people have voted to permit a governmental operated lottery. Secondly, the city council or the county board, as the case may be, has decided that one of the kinds of lotteries which it is going to offer is the video lottery. Third that the county board or the city council as the case may be has issued contracts to establish such a lottery. That is it.
 SENATOR HOAGLAND: So if I understand you correctly, the governing board of the political subdivision has to actually have entered into a contract with a company that provides these electronic slot machines or video slot machines prior to the effective date of the act which if passed with the emergency clause will be the day after the governor's signature.
SENATOR V. JOHNSON: That is correct.
From the foregoing it is clear that the Legislature intended that the governmental subdivision already be authorized by an election, and operating, or at least have entered into contracts to operate a video lottery, on the effective date of the act.
Although you did not specifically inquire about Section 72 of LB 949, we feel it is necessary that we mention it. LB 949 was passed and approved a week after LB 744 was already in effect. Insofar as pertinent here, LB 949 became operative 45 days after passage. Both LB 744 and section 72 of LB 949 purported to amend Neb.Rev.Stat. § 28-1101 (Supp. 1983). However, the latter bill did not purport to amend Neb.Rev.Stat. § 28-1101 (Supp. 1983) as amended by LB 744, which was already in effect.
The changes in § 28-1101 added by the latter bill are very minor and are in no way in conflict with the changes made by LB 744.
Section 49-769 (Supp. 1982) provides in part:
 When one section of the statutes is amended in two or more bills in the same session of the Legislature and has not been correlated as a part of the normal legislative process and the amendments are entirely reconcilable and not in conflict with each other, it shall be the duty of the Revisor of Statutes to correlate them so as to reflect all such amendments. . .
It appears to us that the amendments in these two bills are entirely reconcilable and must be correlated by the Revisor of Statutes.
We do not feel that LB 744 was legally affected by the passage of LB 949 since the latter statute did not mention LB 744 which was already in effect. Article III, Section 14
of the Nebraska Constitution provides in part: `And no law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed.' The Supreme Court of Nebraska has generally held that an act not complete in itself but which is clearly amendatory in its nature and scope must set forth the section or sections as amended and repeal the original sections. See, In Re Conservatorship of Schurmann,183 Neb. 277, State v. Greenburg, 187 Neb. 149.
LB 949 does not fit within the exception of being an independent act, in our opinion, since almost the entire act is composed of amendments to previous statutes concerning bingo, pickle cards and lotteries. A great number of the amendments are concerned with merely changing the name of the act, previously enacted, from the Nebraska Bingo and Pickle Card Regulatory Act to the Nebraska Bingo and Lottery Control Act or, in changing the name, from the `commission' to the `Revenue Department.'
It is therefore our conclusion that LB 949 does not in any way affect the efficacy of LB 744 concerning the operation of video lotteries.
Respectfully submitted,
PAUL L. DOUGLAS Attorney General
Mel Kammerlohr Assistant Attorney General
APPROVED:
?? Attorney General